UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: DANNY ROSS SPLAWN and
MARY ALICE SPLAWN,

No. 7-05-19019 MA

Debtors.

## ORDER DENYING MOTION TO COVERT TO CHAPTER 13

THIS MATTER is before the Court on the Debtors' Motion to Convert Chapter 7 Case to a Case Under Chapter 13 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706 ("Motion to Convert"). Quicken Loans, Inc. ("Quicken"), a creditor who successfully prosecuted an adversary proceeding to deny the Debtors' discharge, objected to the Motion to Convert arguing that the Debtors do not qualify to be debtors under Chapter 13 because they have acted in bad faith. The Court held a final hearing on the Motion to Convert on April 15, 2007 and took the matter under advisement.

After considering the evidence and testimony in light of the history of the Debtors' bankruptcy proceeding and applicable case law, the Court finds that, under the totality of circumstances, including Debtors' failure to seek Chapter 13 relief until after their discharge was denied, Debtors have not proceeded in good faith. Consistent with the Supreme Court's directives in *Marrama v. Citizens Bank of Massachusetts,* 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), the Court finds that Debtors cannot convert from Chapter 7 to Chapter 13. They are not eligible to be debtors under Chapter 13 of the Bankruptcy Code due to their bad faith, evidenced by their manipulation of the bankruptcy process in their clear attempt to avoid, rather than repay, their creditors. Consequently, the Motion to Convert will be denied. In reaching this determination, the Court FINDS:

1

1. Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 5, 2005.

2. On January 6, 2006, Quicken filed an adversary proceeding against the Debtors seeking to deny the Debtors' discharge under 11 U.S.C. § 727(a)(2)(A), 11 U.S.C. § 727(a)(2)(B), 11 U.S.C. § 727(a)(3), 11 U.S.C. § 727(a)(4)(A), and/or 11 U.S.C. § 727(a)(5).[1] *See* Adversary Proceeding No. 06-1010 M.

3. Following a two-day trial on the merits of Adversary Proceeding No. 06-1010M in May of 2007, the Court issued a Memorandum Opinion determining that the Debtors' discharge should be denied pursuant to § 727(a)(2)(A).[2] *See* Adversary Proceeding No. 06-1010M, Docket # 44.

4. The key facts surrounding Quicken's request for denial of discharge under § 727(a)(2)(A) are that the Debtors received and spent certain proceeds following the sale of real property against which Quicken held a mortgage that was unrecorded as of the date of the sale, knowing that Quicken had an interest in the proceeds by virtue of a note and mortgage executed by the Debtors in favor of Quicken. The principal amount of the loan from Quicken was

---

[1] All statutory references are to Title 11 of the United States Code in effect as of January 2005, before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[2] That section provides, in relevant part:
    The court shall grant the debtor a discharge, unless --
        (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . , has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed --
            (A) property of the debtor, within one year before the date of the filing of the petition[.]
11 U.S.C. § 727(a)(2)(A).

2

$64,400.00.

5.  The Court entered a judgment denying the Debtors' discharge on September 17, 2007. *See* Adversary Proceeding No. 06-1010 M, Docket # 45.

6.  Debtors filed the Motion seeking to convert their case from Chapter 7 to Chapter 13 on October 2, 2007. *See* Docket # 54.

7.  Debtors' original Schedule I reflects monthly business income of $7,962.00, and total gross monthly income of $9,332.00. *See* Docket #1. The monthly business expenses reported on Schedule J total $7,123.00, leaving net monthly business income of approximately $800.00. *Id.*

8.  Post-petition, Debtors ceased operating their business as a sole proprietorship. Debtors' insurance sales business is presently operated as a corporation, DRS & Associates, Inc.

9.  For purposes of the final hearing on the Motion, Debtors submitted an updated Schedule I which reflects monthly social security payments in the total amount of $2,215.00 as their only income. *See* Exhibit A. Mr. Splawn testified that based on their current income from social security and their current monthly expenses, the Debtors could contribute approximately $300.00 per month to a Chapter 13 plan.

10.  Debtor Danny Splawn continues to operate his insurance sales business through DRS & Associates, Inc. Bank account records for DRS & Associates, Inc. reflect monthly payments of $1,380.00 and $1,650.00. Debtor testified that these payments respectively represent lease payments for office space for DRS & Associates, Inc., and lease payments for an apartment Mr. Splawn uses when on business for DRS & Associates, Inc. in Denver, Colorado. The corporation also owns two vehicles and apparently pays for meals and other expenses of Mr. Splawn when he is conducting business away from home.

11. Mr. Splawn testified that DRS & Associates, Inc. is not generating a profit at this time, though he acknowledged that DRS & Associates, Inc. continues to receive commissions from insurance companies for product sales and renewals.

12. Section 706 governs conversion from Chapter 7 to Chapter 13. It provides, in relevant part:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
> . . . .
>
> Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706(a) and (d).

13. The eligibility requirements for relief under Chapter 13 of the Bankruptcy Code are found in § 109(e), which provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated secured debts of less than $922,975 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

14. Debtors have not previously converted their case, and their debts do not exceed the debt limitations under § 109(e)[3]; therefore, it appears that they can convert their case under §

---

[3]Debtors' statements and schedules reflect total secured debt in the amount of $403,369.00, and total unsecured debt in the amount of 76,620.00. The debt to Quicken is identified on Debtors' Schedule D as a secured claim in the amount of $55,100.00 based on a

4

706(a). *See In re Miller,* 303 B.R. 471, 473 (10th Cir. BAP 2003)("Pursuant to the plain language of § 706, a debtor may convert at any time if the following two elements are met: (1) the debtor has not previously converted his case; and (2) the debtor meets the eligibility requirements of the chapter to which the debtor wishes to convert."). The Supreme Court's decision in *Marrama,* changes this straightforward approach to § 706(a), holding that § 706(a) does not afford a *dishonest* debtor a one-time absolute right to convert a case from Chapter 7 to Chapter 13. *See* 127 S.Ct. at 1111 (acknowledging "[t]he class of honest but unfortunate debtors who do possess an absolute right to convert their cases from Chapter 7 to Chapter 13" but concluding that "[n]othing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.").

15. In *Marrama* the Supreme Court found that eligibility for conversion under § 706(a) is dependent upon § 1307(c), reasoning that because dismissal of a Chapter 13 proceeding under § 1307(c) "for cause" can be based on a debtor's pre-petition bad-faith conduct, such a determination "is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Marrama,* 127 S.Ct. at 1111. Thus, under *Marrama,* a debtor can forfeit his or her right to convert under § 706(a) when the debtor seeks to convert in bad faith.

16. *Marrama* does not establish standards for determining "bad faith" sufficient to deny a debtor's request for conversion, noting only that the debtor's conduct must be "atypical" and "extraordinary." *Id.* at 1112 n.11.

---

judgment lien. *See* Docket # 1.

5

17. The Tenth Circuit applies a "totality of the circumstances" test to motions to dismiss under § 1307(c). *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier),* 986 F.2d 1326, 1329 (10th Cir. 1993). "Bad faith" in filing the petition can serve as sufficient grounds for dismissal under § 1307(c). *See In re Lanham,* 346 B.R. 211, 214 (Bankr.D.Colo. 2006)(noting that "[b]ad faith is not specifically listed [under § 1307(c)], but nonetheless may constitute 'cause' for dismissal.")(citing *Gier,* 986 F.2d at 1326 (remaining citation omitted)).

18. "Lack of good faith is shown when a debtor files a petition without intending to perform the statutory obligations of a debtor under the Bankruptcy Code or when a debtor's conduct before or during a case constitutes an abuse of the provisions, purpose or spirit of the chapter under which relief is sought." *Lanham,* 346 B.R. at 214 (Bankr.D.Colo. 2006)(citing *In re Merrill,* 192 B.R. 245 (Bankr.Colo. 1995)).

19. Given *Marrama's* directive that § 1307(c) is relevant to the determination of a contested motion to convert under § 706(a), the Court will consider the following factors:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition [or, in this instance, the motion to convert]; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.
>
> *Gier,* 986 F.2d at 1329 (quoting *In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992)).[4]

---

[4]*See also, In re Pakuris,* 262 B.R. 330, 335-36 (Bankr.E.D.Pa. 2001)(reciting the following factors in deciding a contested motion to convert under § 706(a): "(i) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors); (ii) whether the debtor can propose a confirmable plan; (iii) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion; (iv) the effect of conversion on the efficient administration of the bankruptcy estate; and (v) whether conversion would further an

20. "[A] motion to convert can be abusive when it is filed to frustrate the bankruptcy process, rather than to implement the Congressional policy of repayment of creditors." *Pakuris,* 262 B.R. at 338 (citing *In re Sully,* 223 B.R. 582, 585 (Bankr.M.D.Fla. 1998) and *In re Tardiff,* 145 B.R. 357, 360 (Bankr.D.Me. 1992)).

21. However, because "denying a debtor's motion to convert from chapter 7 to chapter 13 has the same 'harsh result' as dismissal of a chapter 13 case under § 1307(c). . . . "the bankruptcy courts should exhibit the same 'reluctance' to deny a motion to convert to chapter 13 that they employ when dismissing a petition for lack of good faith under § 1307(c)." *Condon,* 358 B.R. at 325 and 326.

22. In the instant case, the Debtors sought to convert to Chapter 13 following the Court's determination that they were not entitled to a discharge of any of their debts under Chapter 7 of the Bankruptcy Code. Thus the nature of the debt the Debtors now seek to repay in part through a Chapter 13 proceeding would otherwise be non-dischargeable.

23. The timing of the Motion is extremely suspect. The Debtors did not seek conversion to Chapter 13 until *after* the Court determined that their chapter 7 discharge would be denied. Instead, they took a wait and see attitude, hoping that they would prevail in their defense of the adversary proceeding and not have to repay Quicken at all.

24. Debtors acknowledged that Quicken's actions in garnishing the Debtors' bank account in an effort to execute on its judgment precipitated the original bankruptcy filing.

---

abuse of the bankruptcy process."); *In re Murray,* 377 B.R. 464, 469 (Bankr.D.Del. 2007)(applying the *Pakuris* standards for conversion in light of *Marrama*); *In re Condon,* 358 B.R. 317, 325 (6th Cir. BAP 2007)(concluding that "bankruptcy courts should apply the same good faith standard when evaluating a debtor's motion to convert to chapter 13 as is utilized when considering dismissal of a case under § 1307(c).")(citations omitted).

7

Instead of seeking to repay a portion of their debts through a Chapter 13, Debtors first determined to proceed under Chapter 7. The Court finds that one of the Debtors' primary motives in filing under Chapter 7 was to avoid repaying Quicken. By waiting to seek conversion until after Quicken prevailed on its action to deny the Debtors' discharge, Debtors once again seek to put off repayment of Quicken and ultimately obtain a discharge of the debt owing to Quicken. Such maneuvering is an abuse of the bankruptcy process.

25. Debtors assert that other than their pre-petition conduct upon which the Court based its decision to deny the Debtors' discharge, Debtors have been forthcoming in their bankruptcy proceeding and have "played by the rules," disclosing their assets on their statements and schedules in accordance the requirements of the Bankruptcy Code. But most relevant to the question of good faith in seeking conversion, are "the debtor's actions to repay or avoid the debt *after incurring it.*" *Condon,* 358 B.R. at 329 (emphasis in original)(citation omitted).

26. At the final hearing on the Motion, Debtors offered a sample Schedule I and J reflecting disposable income of $300.00 per month that they could contribute to a Chapter 13 plan. The sample Schedule I reflects no income from Mr. Splawn's operation of DRS & Associates, Inc. Nevertheless bank statements from DRS & Associates, Inc. reflect that it maintains office space and an apartment in Denver for use by Mr. Splawn while doing business for DRS & Associates, Inc. at a monthly expense exceeding $2,500.00.

27. Mr. Splawn testified that the business income from DRS & Associates, Inc. has dropped off significantly in the two and one-half years since the filing of the bankruptcy petition, and that DRS & Associates, Inc. is not presently netting any income. By waiting to seek conversion to Chapter 13 until the business income of DRS & Associates, Inc. dropped

8

dramatically, Debtors have been able to reduce the anticipated monthly plan payment by approximately $800.00, the net monthly business income reflected in Debtors' original Schedules I and J.

28. Mr. Splawn also testified that DRS & Associates, Inc. owns two vehicles; yet, individually, the Debtors now own only one vehicle. This testimony further suggests that the Debtors have been engineering their financial situation in an effort to minimize the plan payments that would be required under a Chapter 13 plan.

29. Based on the totality of circumstances, the Court finds that the Debtors engaged in a consistent pattern of evading repayment of their debt to Quicken and have not proceeded in good faith.

WHEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: April 25, 2008

COPY TO:

| George Moore | Karla K. Poe | United States Trustee |
|---|---|---|
| Attorney for Debtors | Attorney for Quicken Loans, Inc. | PO Box 608 |
| PO Box 216 | PO Box 1888 | Albuquerque, NM |
| Albuquerque, NM 87103-0216 | Albuquerque, NM 87103-1888 | 87103 |

9